WILLIAM E. MONTAGUE ET AL.

v.

SETH F. HANCHETT ET AL.

1. VENDOR AND VENDEE—FRAUD.— Where goods are fraudulently obtained and subsequently sold to an innocent third party, who has no notice of the fraud, and he sells them to another party who has actual notice *aliunde* of the original fraud, the latter will get a good title to the goods.

2. PRACTICE—AMENDMENT INSTANTER, MUST BE MADE AT FARTHEST WITHIN TWENTY-FOUR HOURS. —Leave to amend *instanter* expires at

farthest at the end of twenty-four hours after it is granted, and any amendment filed after that time without any further leave of court, or the attention of the court being in any way called to it, will properly be ignored by the court, and the case will be disposed of as if such amendment had not been filed.

ERROR to the Circuit Court of Cook county; the Hon. LORIN C. COLLINS, Judge, presiding. Opinion filed October 27, 1886.

Mr. I. K. BOYESEN, for plaintiffs in error; that where a note has been obtained from the maker by fraud, a person claiming to be the owner and holder of such note for value, must show affirmatively that he has paid value and has no notice of the fraud, cited Wright v. Brosseau, 73 Ill. 381.

The above doctrine is equally applicable to chattels: Easter v. Allen, 8 Allen, 9; Stevens v. Brennan, 75 N. Y., 254; Pringel v. Phillips, 5 Sandford, 157; Neff v. Landis, 1 Central Law Reporter, 133.

A demand is not necessary where it appears that a demand would have been unavailing: Cranz v. Kroger, 22 Ill. 80; Johnson v. Howe, 2 Gilm. 344.

Messrs. MILLER, LEMAN & CHASE and Messrs. KRAUS, MAYER & BRACKETT, for defendants in error; that the sale of the goods by Strauss to Emil Freise, in payment of a pre-existing debt, was a sale upon a valuable consideration, and is entitled to the same protection as if upon a new consideration paid on the sale, cited Butters v. Haughwout, 42 Ill. 18; Manning v. McClure, 36 Ill. 490; Kranert v. Simon, 65 Ill. 344; Van Duzor v. Allen, 90 Ill. 499; Hanchett v. Kimbark, (Ill. Sup. Ct.) 18 Chicago Legal News, 45.

A debtor, in the sale of his property, has a right to prefer one creditor over all others; and he may sell his property to one of his creditors in payment of his debt to him, to the exclusion of other creditors, and the consideration will be sufficient to support the transfer: Hessing v. McCloskey, 37 Ill. 341; Morris v. Tillson, 81 Ill. 607; Goembel v. Arnett, 100 Ill. 34.

Where a sale is made to a party guilty of a fraud, and possession is delivered by the vendor to the vendee in execution of the contract or sale, then the title passes and the sale is not void, but merely voidable. And if the vendee transfer the goods to an innocent third person for a valuable consideration, before the sale is avoided, the rights of such original vendor will be subordinate to those of such third person: Benjamin on Sales, Sec. 433 (3rd Am. Ed.); Brundage v. Camp, 21 Ill. 329; Mich. C. R. R. Co. v. Phillips, 60 Ill. 190, 197; Jennings v. Gage, 13 Ill. 610; Chi. Dock Co. v. Foster, 48 Ill. 507.

MORAN, J. This was an action in replevin brought by the plaintiffs in error to recover possession of a lot of knitting yarns which were obtained from plaintiffs by fraud.

The evidence tends to show that Strauss and Gruner, who purchased the goods from plaintiffs, entered into a conspiracy with one Simon Wolff in pursuance of which said Strauss and Gruner were to obtain a large amount of goods on credit and then fail. The yarns in question were purchased in May, 1884, with intention on the part of Strauss and Gruner not to pay for them, and when they knew themselves to be insolvent. The goods were not taken to the store of Strauss and Gruner when they arrived in Chicago, but were stored in a boot and shoe house on Lake street. About July 21, 1884, the failure took place, and Strauss and Gruner having confessed a judgment in favor of a Buffalo bank, the sheriff took possession of their stock and place of business under an execution issued on the judgment. A few days afterward the yarns in question in the suit were turned over by Strauss and Gruner to the defendant, Emil Freise, in payment of a debt of six or seven hundred dollars, which the firm were owing him, and were by him sold to the defendant Wieboldt for the sum of $750.

Much evidence tending very clearly to establish that a fraud was perpetrated by Strauss and Gruner upon the plaintiffs in the purchase of the goods, was introduced upon the trial in the court below, a statement of which evidence here would serve no useful purpose.

Montague v. Hanchett.

The court, at the conclusion of the plaintiffs' case, gave the jury the following instruction:

" The court instructs the jury that plaintiffs' evidence is not sufficient in law to sustain a recovery, and the court instructs the jury to find the issues for the defendants, and find the right of property replevied in William R. Wieboldt, one of said defendants."

The giving of such instruction is assigned for error, and it is contended by counsel for plaintiffs that there was evidence tending to charge Freise and Wieboldt with knowledge of the fraud of Strauss and Gruner in obtaining the goods.

The material inquiry in the case is, whether there is evidence to charge Freise with knowledge of the fraud or with facts and circumstances sufficient to put him on inquiry. If Freise was a *bona fide* purchaser of the goods for value, then his vendee, Wieboldt, would get a good title to the goods even though said Wieboldt had actual notice of the fraud by which the goods were obtained from plaintiffs.

There is no pretense that Freise is proven to have had actual knowledge of the fraud of Strauss and Gruner in purchasing the goods, but it is said that he knew that the goods were not in the store of Strauss and Gruner, but were stored in an unusual place; that the goods were turned out to him in payment of a pre-existing debt for a little more than half their value and that without taking the goods to his own place of business he sold them to Wieboldt for less than they were worth. We are wholly unable to conclude that these facts, when considered as they must be, in connection with the other evidence, form any basis for holding that Freise was placed upon inquiry as to the manner in which Strauss and Gruner obtained the goods. There is no evidence tending to show that Freise knew anything about the goods before they were turned out to him by Strauss in payment of the debt due to him by the firm, and the proof shows that they were not turned out to him until after the failure and after the sheriff was in possession of the stock of Strauss and Gruner, at their place of business under the execution. The yarns were undoubtedly subject to the lien of the execution, and having thus stored them at the out of

the way place, would indicate to Freise and put him on notice that they were so stored to keep them out of the sheriff's possession, but would furnish no grounds for suspicion that there was fraud in their purchase. The fact that Freise took the goods for less than they were worth and without examining them, and, when his debtors were known to be insolvent, would only show that he was willing to obtain any advantage he could through the preference of his debtors. The fact that they were willing to let him have such preference under the circumstances then existing, could in no way lead him to suspect that the goods were obtained by fraud.

We have examined the record in vain for any evidence tending to charge Freise with notice or even suspicion of the fraud by which the goods were purchased. There was no evidence which the court would be justified in submitting to the jury upon that question, and so far as the defendants, Freise and Wieboldt are concerned, the instruction given by the court was proper.

It is contended, however, that there was error in giving the instruction, because there was a count in trover against all the defendants on file, and the evidence clearly entitled the plaintiffs to a verdict on that count against the defendants Strauss and Gruner. The difficulty with the contention is, that there was no count in trover on file which the court was bound to regard. The first declaration filed was the common declaration in replevin. The record shows that on June 2, 1885, the plaintiffs took leave to amend their declaration instanter. It does not appear that any amendment was made under such leave, and such leave expired at the farthest, at the end of twenty-four hours after it was granted. On December 4, 1885, the count in trover was filed without any leave of court, and so far as appears from the record, without the attention of the court being in any manner called to it. Under such circumstances the court could give such count no attention or consideration, and properly disposed of the case without reference to it. It was irregularly and improperly on the files of the court, and though not stricken out, it had no bearing on the case. There was no error in ignoring it in instruct-

ing the jury: Flanders et al. v. Whittaker, 13 Ill. 707; Bently v. Dixon, 1 Ark. 165.

No error appearing, the judgment of the circuit court must be affirmed.

Judgment affirmed.